UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 4:07-cr-329 CDP |
| vs. | ) |
| | ) |
| ERIC SEYMOUR AFFHOLTER, | ) |
| | ) |
| Defendant. | ) |

## SENTENCING MEMORANDUM

COMES NOW Defendant, Eric Seymour Affholter ("Eric"), by and through counsel, and files the following memorandum for sentencing:

18 U.S.C. § 3553 obliges this Court to impose a sentence that is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing. See 18 U.S.C. § 3553(a). Those purposes are as follows:

> (A) to reflect the seriousness of the offense; to promote respect for the law; and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

See 18 U.S.C. § 3553(a)(2)(A)-(D). In calculating the minimally sufficient sentence, this Court must consider the factors below:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed to accomplish each of the purposes of sentencing listed in § 3553(a)(2);
> (3) the kinds of sentences available;
> (4) the guidelines promulgated by the Sentencing Commission;
> (5) any pertinent policy statement issued by the Sentencing Commission;

    (6)  the need to avoid unwarranted sentencing disparities among similarly situated defendants; and

    (7)  the need to provide restitution to the victims

18 U.S.C. § 3553(a). The Guidelines constitute one factor this Court must consider in determining the minimally sufficient sentence to impose. See United States v. Winters, 416 F.3d 856, 861 (8th Cir. 2005). They deserve no greater weight than any other factor. Id. Nevertheless, in the present case, a Guidelines sentence of one year probation will sufficiently advance the statutory purposes of sentencing to satisfy this Court's mandate under § 3553(a).

### I  The Nature of Eric's Offense

In 2002, Eric and Pedro Cerna-Rojas ("Pedro") met through mutual friends. Eric worked as a public defender; Pedro pursued a graduate degree in international business at Webster University on a student visa. They dated, fell in love and purchased an old home in a close-knit city neighborhood. They restored the home, made friends of neighbors and, like any other couple, constructed a life on their commitment to one another.

Pedro's visa neared expiration in 2004. Eric and he contacted an immigration attorney, but no mechanism allowed Pedro to adjust his status. To hold together the life they constructed, Eric arranged for Pedro to marry a friend. Pedro and she married on December 10, 2004. Eric and Pedro continued with their lives until the Department of Homeland Security initiated its investigation earlier this year. Eric surrendered to the United States Marshal's Service on June 1, 2007 and immediately accepted responsibility.

### II  Eric's Personal History and Characteristics

Eric grew up in the suburbs of Detroit, Michigan, the youngest of eight children. At two years of age, he drowned in a lake. His brother found him lifeless, and staff at a local hospital revived him. Eric has no recollection of the event, but it profoundly impacted his family and

shaped the relationships within it.

Some of Eric's earliest memories involve his maternal grandfather, who lived with the family in his later years. The family of ten already filled the home to capacity. Giving care to a parent in sickness, through death, exemplified the values Eric's parents emphasized.

Eric received a Catholic upbringing and education. Following high school, he entered the seminary with a religious order that ministered to the poor. The order had a college in Wisconsin, where Eric spent his first year attending classes and assimilating. That same year, the order looked to move the college. It selected Eric as a student representative for its search committee. The committee selected St. Louis University as its site. Eric was accepted into the novitiate one year after the move.

Eric completed his vows within a year and pursued a bachelor's degree in philosophy at St. Louis University. On summer break, he volunteered at a parish in Minnesota and a retreat in Wisconsin. In those same years, he volunteered at Food Outreach, a non-profit organization through which he provided in-home meals and companionship to HIV patients. The board of Food Outreach recruited Eric to serve as a member and ultimately elected him president. Eric later volunteered with HIV and terminal AIDS patients at a local hospital.

In 1993, Eric earned his philosophy degree and left the order that brought him to St. Louis. Inspired by his work with terminally ill patients, he pursued a hospital ministry. He obtained a theology degree, completed the additional requirements and received certification from the College of Chaplains, a national certification body. He applied for and received a grant for the first chaplain fellowship at Barnes hospital. The fellowship's ministry provided spiritual care to hospital patients and examined the connections among faith, well being, and disease progression.

As the fellowship ended, Eric accepted a position as Director of Spiritual Care at Beacon of Hope Hospice.  The hospice extended Eric's ministry to an ever larger number of patients.  Eric served as director for several years, then turned to pursue a juris doctorate.  To do so, he took part-time status at the hospice and enrolled in a five–year law school program.

As a law student, Eric worked with the public defender for St. Louis City through its internship program.  In the summer of his second year, he accepted a position with a private criminal defense firm.  He attended school full-time in his third year and earned his degree two years earlier than anticipated.  In 1999, eight months after graduation, Eric started as a public defender, providing competent, compassionate and conscientious legal representation to the indigent community of St. Louis City.  He was promoted to Assistant Public Defender IV, the state's highest designation, within four years.  In 2003, after a two month departure, he returned to the office as its district defender.  Eric served as a dedicated, caring, and zealous advocate who demonstrated integrity and judgment in all situations.  See PSR at ¶ 46.  Eric remained district defender until May 2007, when he resigned as a result of the instant offense

### III      Congressional legislation, the United States Sentencing Guidelines and United States Sentencing Commission Data Suggest Eric Merits a Sentence of Probation

Congressional legislation identifies Eric as among the offenders who generally merit a sentence of probation.  In delegating sentencing authority to the United States Sentencing Commission, Congress directed the Commission to impose sentences "other than imprisonment" on non-violent first offenders who commit other than serious offenses.

> The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment

>on a person convicted of a crime of violence that results in serious
>bodily injury.

See 28 U.S.C. § 994(j).  Eric is a first offender who committed a non-violent offense.  Congress, moreover, identifies his offense as relatively non-serious by assigning to its offenders a range of punishment that permits probation and limits imprisonment to not more than five years.  See 8 U.S.C . § 1325.  Congress therefore identifies Eric as among the offenders who generally merit a sentence of probation

At a lower level of generality, the Guidelines do the same.  The Guidelines Sentencing Table is divided into four zones:  Zones A, B, C and D.  See U.S.S.G. § 4B1.5.  The Guidelines advise the most lenient sentences for Zone A offenders.  See U.S.S.G. § 5B1.1(a)(1)-(2) and § 5C1.1(b)-(f).  In fact, they advise probation alone only for Zone A offenders.  See U.S.S.G.  §§ 5B1.1(a)(1)-(2).  Eric falls within Zone A of the Sentencing Table.  See PSR at ¶ 55.  The Guidelines, therefore, specifically identify him as among the offenders who most merit a sentence of probation.

United States Sentencing Commission data support this classification.  See e.g., United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the United States Sentencing Commission's Legislative Mandate, 16 (May 2004) [hereinafter Recidivism Report]; Recidivism And The "First Offender": A Component of the Fifteen Year Report on the United States Sentencing Commission's Legislative Mandate (May 2004) [hereinafter First Offender Report].  The Guidelines deem "first offenders" generally less culpable and less likely to re-offend than all other offenders.  See First Offender Report at 1.  However, the Guidelines broadly

define first offender status.  Id; see also U.S.S.G. §§ 4A1.1.  The Commission, in fact, concedes it can narrow the definition to better identify those offenders who prove least culpable, least likely to re-offend, and therefore most deserving of the leniency recommended by 18 U.S.C. § 994(j).  Id.  In an on-going effort to do so, the Commission recently collected data on three categories of first offenders:  those with no criminal history points and (I) no prior arrests, (ii) prior arrests but no prior convictions or (iii) prior convictions counted under U.S.S.G. § 4A1.2(c)(2) only.  See id. at 5.  The Commission denominated the groups A, B and C, respectively.  Id.  It drew the following conclusion from its analysis:

> From both culpability and recidivism risk perspectives, group A offenders with no prior arrests, most strongly meet the conceptual definition of the first offender category.  Offenders in group A have had no recorded contact with the criminal justice system prior to their instant federal offense. Moreover, as indicated by their extremely low recidivism rate, 6.8%, they are easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend.

See id. at 17.  Eric had no contact with the criminal justice system prior to commission of the instant offense; he, therefore, falls within group A.  See PSR at ¶ 30.  Accordingly, United States Sentencing Commission data also identify Eric as among the offenders who most merit a sentence of probation.

> **IV    Eric's Motive for Committing the Offense Suggests He Merits Leniency**

Base motives that commonly animate crimes--greed, animus or self-aggrandizement--played little role in Eric's offense.  Love proved the animating principle:  he committed the offense to spend his life in the country of his birth with the person with whom he fell in love.  His motive should prove relevant to sentencing.  Indeed, even in the restrictive pre-Booker

6

environment, district courts departed from the Guidelines when the animating principle of the offense proved distinguishable from the ordinary.  Thus, in Singh, the district court departed 16 months from the applicable Guidelines range for an immigrant who illegally re-entered the country simply to visit his dying mother.  See United States v. Singh, 224 F.Supp.2d 962, 964 (E.D. PA 2002).  The court observed, "while the defendant clearly violated the law, the purpose behind [his] illegal re-entry….indicate[d] a low level of culpability."  Id.  Post-Booker, courts have imposed non-Guidelines sentences on this same basis.  For example, in Hadash, the Eighth Circuit affirmed a sentence of probation and a fine for an offender charged with possessing stolen firearms for whom the Guidelines advised imprisonment of 12 to 18 months.  See United States v. Hadash, 408 F.3d 1080, 1084 (8th Cir. 2005).  The court noted the defendant's ordinarily law-abiding nature and concluded the Commission did not intend to imprison such offenders.  Id.  As in Hadash, Eric has lived a law-abiding life of service to others.  As in Singh, he committed the offense only to preserve his relationship with Pedro.  Both factors mitigate the crime and distinguish Eric and the offense from the ordinary[1].

**IV     The Collateral Consequences Eric Has Suffered Suggest He**

---

[1] Anwar, for example, provides a contrast.  See United States v. Anwar, 428 F.3d 1102 (8th Cir. 2005).   Over a ten year span, Anwar recruited several female employees to marry Pakistani nationals for the purpose of evading immigration laws.  Id. at 1106-07.  Each employee understood the purpose of the marriage, and Anwar allegedly assured them financial compensation.  Id.  Anwar tested the government's proof at trial, and the jury convicted him on two counts connected to the fraudulent marriages he arranged.  Id. at 1106.  The court imposed a sentence of 6 months imprisonment and three years supervised release.  Id.
   Eric's conduct proves distinguishable.  Eric did not promote multiple marriages; he promoted one.  Moreover, he did so only to keep his own partner in the country.  Likewise, Eric neither gave nor offered remuneration to any one.  Indeed, those who assisted him would have likely rejected it had he done so.  They were friends.  In addition, Eric accepted responsibility for his conduct.  He admitted guilt, resigned from his position as district defender and pled guilty shortly after he was indicted.

**Merits Leniency**

A district court may consider the collateral consequences suffered as a result of conviction in determining the appropriate sentence to impose. See e.g., United States v. Samaras, 390 F.Supp.2d 805, 809 (E.D. Wisc. 2005) (imposing a below Guidelines sentence, in part, because the defendant would likely lose his government job as a result of conviction); see also United States v. Wachowiak, 412 F.Supp.2d 958 (E.D. Wis. 2006) (imposing a non-Guidelines sentence, in part, because the defendant would lose his profession and ability to continue as both a children's piano teacher and church musician as a consequence of conviction).

Eric has suffered serious consequences as a result of the instant conviction. Like the defendants in Samaras and Wachowiak, he lost a calling and unique occasion to serve others. He lost his license to practice law in addition. Above all, however, he lost Pedro, the man he loved and with whom he quietly and peacefully shared his life. Eric will surely find a way in which to serve others again. He cannot replace Pedro.

**V      Conclusion**

"[I]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." See Rita v. United States, ----U.S.---- (2007); 127 S.Ct. 2456, 2472-73 (quoting Koon v. United States, 518 U.S. 81, 113 (1996)). The individual before this Court has lived an exemplary life in service of others, save the instant offense which he committed without base motive. The confluence of factors that prompted the offense appear exceedingly unlikely to recur. Congressional legislation, the Guidelines manual and Commission data all suggest he merits

8

leniency.  The circumstances of the case suggest the same, as do his friends, family and former colleagues all of whom have submitted letters to this Court.

For all of these reasons, Eric Affholter, through counsel, respectfully requests this Honorable Court impose a sentence of one year of probation, as that sentence will sufficiently advance the statutory objectives of sentencing and best comply with the congressional mandate codified at 28 U.S.C. § 994(j).

Respectfully submitted,

ROSENBLUM, SCHWARTZ, ROGERS & GLASS, PC

By:   /s/ Adam D. Fein
ADAM FEIN, # 506332
Attorney for Defendant
120 S. Central Avenue, Suite 130
Clayton, Missouri 63105
(314) 862-4332/Facsimile 862-8050

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 4:07-cr-329 CDP |
| vs. | ) |
| | ) |
| ERIC SEYMOUR AFFHOLTER, | ) |
| | ) |
| Defendant. | ) |

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 9, 2007, the foregoing was electronically filed with both the Clerk of the Court and Mr. John Ware, Assistant United States Attorney.

**Sentencing memorandum**

ROSENBLUM, SCHWARTZ, ROGERS & GLASS, PC

By:   /s/ Adam D. Fein
     ADAM FEIN, # 506332
     Attorney for Defendant
     120 S. Central Avenue, Suite 130
     Clayton, Missouri 63105
     (314) 862-4332/Facsimile 862-8050